Chancellor Matthews
delivered the decree of the Court:
This is one of those cases which admit of a great deal of argument, but which is ultimately resolved into a very narrow compass. Yery elaborate arguments have, been accordingly gone into; the result of which has been to reduce the case to a single point, viz. whether the. bequests to the complainant, by the will of her late husband A. Loocock, either pecuniary or specific, are liable to abate in proportion with the other pecuniary or specific legacies, on a deficiency of assets, to pay both debts and legacies ? And after all the industry and researches of counsel, it is admitted on all hands, that there is not a case in the *476 books, which is assimilated to the present, in all its nm« terial parts. We concede to this assertion; for upon the strictest examination of all the cases that have been t'Nerred to, we find that they treat upon the general doctrine of, and the distinctions taken between, pecuniary and specific legacies, except the cases of Blower and Morret, 2 Vez. 420, and Burridge and Bradyll, 1 P. Wms. 127, in which the point of dower is included, and on which point those cases were decided. In the case of Luthins and Leigh, Talbot, 53, although the bequest in that case, is in lieu of dower, yet the decision does not vest on that point, but turns on that of placing the legatee on the footing of a bond creditor, so as to constitute a lien on the real estate, where they have exhausted the personal assets in payment of their demands. In these cases the bequests have been pecuniary; and had they not been given in satisfaction of dower, whereby the legatee Was contemplated as a purchaser of such legacy, the decisions would have been as they uniformly are, that is, to consider them as mere pecuniary legacies; and consequently subject to abate on failure of assets. But in the case before us, the annuity is a general charge on the testator’s whole estate. There is no sum specified to be laid out in the purchase of an annuity — there is no particular fund pointed out by the testator, from whence the annuity is to be drawn. The words of the will are «I give and devise and bequeath unto my dear and affectionate wife Mary Loocock the annual sum of 3001 sterling,, each and every year, during the term of her natural life, in order that she may live in quiet and easy circumstances.1”
The technical words, devise and bequeath, we well know the meaning of; and from the use made of them by the testator, we arc to presume ho also understood their meaning; for in the different clauses of his will, he regularly makes use of the word devise, when lands are the object of his bounty, and when a personal thing he uses the word bequeath; therefore as he has used both words in the clause, respecting the annuity to his wife, a fair deduction may be made, that by the generality of the *477 terms made use of by him, he meant to rharge his whole estate, and render it responsible for the payment of the annuity. Here the rule of construction of wills presents itself, and must influence the decision of this point; -that is, what was the testator’s intention ? When this is asccr-tained, and it does not militate against the rules of law, it must prevail. There never has been a case presented to this court for consideration, in which the. intention of the testator has been more clearly manifested. Who is the first object of his bounty ? His wife. And is it not right that she. should be so ? He had no child. Who then so naturally, so justly, and so consistently with every law, divine, and human, ought to have a claim on his benevolence as his wife ? One with whom he. had lived in harmony and conjugal felicity for upwards of thirty years. A man’s will is supposed to be the last act of his life. In that of the. testator, Mr. Loocock, he mentions his wife in the most endearing terms; and so anxious did ho then appear for her future felicity, that he. expressly says, that the annuity is given her to render those days in which she is to remain in tiiis world, (when he himself shall be no more) easy and comfortable. And who so proper a judge of what would be adequate to this purpose, as he wasi That adequacy he lias himself fixed; and it would be a very ungracious thing then in this court to strip her of that means of quiet and comfort intended by the testator; and thereby oblige her to taste of the bitter cup of indigence in the wane of life; a period when human nature requires all the comforts of case and tranquillity.
That the complainant was the lii'st object of the testator’s bounty and munificence, appears by his will; but she is also the last, which is shown by bis codicil, ily the latter, so far from thinking that be had done too much for her, he increases what ho had before give.11 her, by-giving her an absolute estate in a part in which he had before given her only a life estate; and she is here the sole object of his bounty. And it is proper here to mention, that this was done upwards of two years after he had made his will, in which time lie had full leisure to consider not only of what he had before done for Isis wife, bul *478 also of the situation of his affairs. The most natural con-' elusion therefore must be, that ha did not think his liberal intentions were liabie to be defeated, nor is it now pretended that they will be so, as to the defendants. But it is however contended that one of the defendents, ¥m. Clarkson, was equally the object of his bounty with his wife; the testator having taken him from his parents "in his early youth, educated him and brought him up to business, in the mercantile Hue; that he had spent the best years of his life in the testator’s service; and that he had always promised to reward him with a large proportion of his estate at his death. That he was equally the object of the testator’s bounty, no part of his will can justify. That he was one of the principal objects of his bounty we will readily admit; nor lias it been by any moans shewn that he will not be immediately so. It is true lie might not receive that prompt and extensive benefit out of the testator’s estate, which lie might have expected, owing to there having appeared to be larger debts against his estate, than lie had calculated upon; and the property left by him being of a more depreciated value than he had estimated it at. But the effect of this mistake of the testator will be, not the disappointment of defendant, but of others, who might have expected to liave shared some part of his bounty. As it is represented by defendants in tlieir answer, that not one shilling of the testator’s pecuniary bequests can bo paid, the consequence will be, that so large a sum as 35701. intended by him for other persons, will be appropriated to the benefit of defendants, by paying so much of the debts of the testator. These advantages do not stop here; for upon the death of the complainant every tiling given her, except tiic few negroes contained in the codicil, and some furniture and stock of cattle, will fall into the residuum of the estate, and become the property of one, or the other of the defendants. Where then arises the great hardship, that has been so loudly complained of? We can by no means think the complaintwcll founded. Hence the testator’s intentions as to the complainant, admit of no doubt. It remains to examine whether they are in any respect in- *479 ©(insistent with any principle of law. So far from it, that they are warranted by the adjudged cases of Blower and Morret, and Burridgo and Bradyll, as far as those, cases correspond with the present case. If those, cases then induced the decisions made by the court, on how much stronger ground shall we stand in determining in favor of the complainant in the principal case. In those cases the bequests are accompanied by no special words. They are simply for sums of money, to be paid out of a particular fund or to be laid out in the purchase of an annuity. But as they were given in satisfaction of the wife’s dower, the court considered the legacies not only as specific, but that the legatees were fair purchasers; and therefore not liable to abate, with other legacies of the same, description. How much stronger then is the case before us ? The words annexed to the legacy are nearly tantamount to a positive injunction, that it shall be paid in preference to any other; otherwise the testator’s intentions cannot be complied with. The charge- appears to have been intended to be on his whole estate; and in lieu of dower, out of a very large, real estate; which probably might be equal in value to the legacy given. Besides, the sum she would bo entitled to, out of lands already sold, to which she never had renounced her dower, and those, which are unsold, would have been a vested interest in her, at her own disposal, whereas she takes nothing by the will, except the trifle before mentioned; but a contingent interest, depending on her life. As to the orders for 100?. given to the complainant by her husband a few days previous to his death, to bear her expenses to this state, and by her afterwards given up to the defendant Wm. Clarkson — that point having been conceded by the defendant’s counsel, it is unnecessary for us to make any particular observations on it. On the whole, we are clearly of opinion that the claim of the. complainant is a well founded one, and ought to be complied with.
It is therefore decreed, that the executors of the testator A. Loocock, do, under the direction of the master, give, such security for the regular payment of the. annuity of 300?. left her by her late husband Aaron Loocock, as *480 shall be approved by him; that they deliver over to her, such parts of the testator’s estate as is assigned her by his will; and that they return her the sum of 100k given her by her husband to bear her expenses to this state after his death; first deducting therefrom, the amount of what was advanced her by the defendant Win, Clarkson for that purpose. And that the costs of this suit be paid out of the estate of A. Loocock.